IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HASANI LEE, and TONI WIGGINS,<br><br>Plaintiffs,<br><br>vs.<br><br>OMAHA HOUSING AUTHORITY, Authority Vash Home Mod Programs; and SELDIN COMPANY,<br><br>Defendants. | **8:25CV569**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on various pending motions. Plaintiffs filed a motion for Emergency Temporary Restraining Order/Preliminary Injunction. Filing No. 37. Defendants have filed Motions to Dismiss. Filing No. 5, Filing No. 20, and Filing No. 48. Plaintiffs have also filed a Motion to Amend the Complaint, Filing No. 75, and a Motion to Stay, Filing No. 76. This case involves a son and daughter-in-law suing a public housing agency and a property management company because they were not allowed to be live-in aides of the father/father-in-law. Plaintiffs have brought this suit alleging violations of the Fair Housing Act, 42 U.S.C. § 3601 et. al., the Rehabilitation Act, 29 U.S.C. § 794, the Nebraska Fair Housing Act, Neb. Rev. Stat. § 20-301 et seq., and violations of the Nebraska Political Subdivision Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. by Defendants.

## I.    BACKGROUND

Plaintiff's allegations taken as true at this stage are as follows:  Plaintiff Hasani Lee ("Hasani") is the son and was Power of Attorney for Henry Lee ("Henry"), a disabled veteran, who received public housing assistance from the Omaha Housing Authority

1

("OHA"). Filing No. 7 at 2. Hasani was Henry's primary caregiver and proposed live-in aide. *Id*. Hasani's wife, Toni Wiggins ("Toni"), was designated as successor agent under Henry's Power of Attorney, and a proposed secondary live-in aide. *Id*. Henry moved into an apartment managed by Seldin, Co. on June 30, 2025. Filing No. 31 at 3. Plaintiffs moved into that same unit on July 2, 2025. *Id*. On July 3, 2025, Henry submitted a request for accommodation naming Hasani as a live-in aide. Filing No. 7 at 4; Filing No. 18-1 at 45. The letter from Henry dated July 3, 2025, was sent to Seldin Co. Filing No. 18-1 at 45. It is not clear from the record whether, or when, that request was forwarded to or received by OHA. Correspondence from OHA indicates that as of August 1, 2025, it had not received a request for a live-in aide. *Id*. at 63. Notwithstanding that correspondence, on August 5, 2025, OHA approved the request for a live-in aide for Henry but specifically indicated that "persons who already live with you are not eligible to be live-in aides." Filing No. 7 at 5; Filing No. 18-1 at 69. That letter does not specifically deny either Hasani or Toni. It states that "[w]hen you identify a specific person to be your live-in aide, promptly notify OHA and your property management office. OHA and your landlord will conduct screening and require documentation for approval of a live-in aide." Filing No. 18-1 at 69. Again, there is no evidence in the record that indicates when, how or by whom OHA and Seldin were notified that Hasani and Toni were identified as Henry's live-in aides.

Beginning August 1, 2025, Hasani began a letter writing campaign to various people and agencies complaining about the live-in aide process and the withholding of Henry's rent subsidy. Filing No. 18-1 at 71–88 (emails to HOA and OHA board of commissioners dated 8/1/25 and 8/2/25); *id*. at 90 (letter to Omaha Mayor John Ewing

dated 8/3/25); *id*. at 94 (request for public records to OHA dated 8/1/25); *id*. at 103 (HUD complaint dated 8/7/25); *id*. at 125 (letter to Seldin property manager dated 8/21/25).

OHA sent a follow up letter to Plaintiffs on August 20, 2025, which clarified that as "assisted" family members living in the "assisted" home, they cannot serve as live-in aides. Filing No. 7 at 5; Filing No. 18-1 at 115. Hasani requested an informal grievance hearing. Filing No. 18-1 at 122. That hearing was held on September 10, 2025. Filing No. 31 at 3. It is unclear what the outcome of that hearing was, but on October 23, 2025, OHA approved Plaintiffs as live-in aides for Henry retroactive to June 2025. Filing No. 37 at 2.

In July and August 2025, OHA withheld Henry's HUD rent subsidy payments. Filing No. 7 at 5. On August 26, 2025, Seldin left a 30-page rental application for Plaintiffs taped to Henry's front door. *Id*. The letter from Seldin dated August 25, 2025, included in that packet indicates that Henry signed the lease with Seldin and that based on Henry's contract with OHA, they would pay a portion of the rent under the Housing Assistance Payment program. Filing No. 18-1 at 129. The letter from Seldin also indicated that as Hasani and Toni were household members, they needed additional information from them (screening applications, LIHTC application and proof of income). *Id*. at 129–30. There was no threat of eviction in that letter.

Plaintiffs claim that they were injured by Defendants' conduct, including denial of live-in aide status, retaliatory withholding of HUD-VASH payments, coercive lease demands, and fraudulent paperwork requirements.

Although Hasani had Power of Attorney, he did not bring this action on behalf of his father or in the interest of his father. Plaintiffs state that they "bring this action in their

3

own right under **42 U.S.C. § 3617**, which prohibits **retaliation and coercion** against '**any person'** exercising or aiding the **exercise of fair housing rights.**" Filing No. 7 at 3 (emphasis in original). Plaintiffs also affirmatively state that "[b]ecause Hasani and Toni were personally subjected to **retaliation and coercion**, Henry Lee ***is not a required party under*** *Fed. R. Civ. P. 19*. Hasani and Toni claims are independent and fully actionable." *Id.* at 4 (emphasis in original).

Notwithstanding the approval of live-in aide on October 23, 2025, in their "Emergency Motion," filed after the approval, Plaintiffs allege that they along with Henry are being threatened with eviction for non-payment of rent and improper request that they complete tax-credit applications. Filing No. 37 at 2. On May 15, 2026, Defendant OHA filed a supplement to its brief in support of motion to dismiss. Filing No. 72. That supplemental filing advised the Court that Mr. Henry Lee died on or about March 21, 2026. *Id*.

## II.    LAW

### A.  Preliminary Injunction

The Fair Housing Act expressly authorizes injunctive relief in cases of discrimination or retaliation. 42 U.S.C. § 3613(c)(l). Section 504 of the Rehabilitation Act likewise authorizes equitable relief for disability discrimination. 29 U.S.C. § 794a.

When evaluating whether to issue a preliminary injunction, a district court should consider four factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en

banc); *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011). A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant. *Id.* However, the passage of time or a change in circumstances where the federal court can longer grant effective relief, may result in the mootness of the preliminary injunction. *Arc of Iowa v. Reynolds*, 33 F.4th 1042, 1044 (8th Cir. 2022); *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005).

## B. Motion to Dismiss

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Under *Twombly*, a court considering a motion to dismiss may begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *See id.* (describing a "two-pronged approach" to evaluating such motions:

5

First, a court must accept factual allegations and disregard legal conclusions; and then parse the factual allegations for facial plausibility). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

III.    **DISCUSSION**

   **A. Motion for Preliminary Injunction**

Plaintiffs ask the Court to prevent OHA and Seldin from evicting them and Henry Lee from their subsidized housing and prohibit the defendants from making them sign an application that they do not think they have to complete as caregivers. Because the Court finds that these requests are moot, the motion for TRO/preliminary injunction (Filing No. 37) is denied.

The situation that presented itself at the time the Plaintiffs filed the Motion in October 2025 is vastly different now. First, OHA granted Plaintiffs live-in aide status that month. Second, unfortunately, Henry passed away in March 2026. Consequently, whatever harm might have been attributable to the possible eviction of Henry, no longer exists because of his death. Therefore, that claim is no longer viable.

Moreover, by their own admission, Plaintiffs never completed an application for housing because they did not think that it was required for caregivers and in fact, they seek relief from this Court to not have to complete such an application. As such, they are not on the lease agreement with OHA. Plaintiffs have no claim of illegal eviction or any other claim for injunctive relief.

The Court cannot grant any effective relief that was sought in the preliminary injunction, and therefore, the request for preliminary injunction is moot and is denied. *See Ali*, 419 F.3d at 724.

### B. Motions to Dismiss

Defendants have filed motions to dismiss for failure to state a claim upon which relief can be granted.

### 1. Claims under the Fair Housing Act

Plaintiffs' first cause of action is that OHA refused to grant Henry a reasonable accommodation to allow Hasani and Toni to serve as live-in aides and that refusal amounts to unlawful discrimination under 42 U.S.C. § 3604(f)(3)(B).

The FHA prevents discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin," or "because of a handicap." 42 U.S.C. § 3604(b), (f)(2). For purposes of the FHA, discrimination includes a refusal to make "reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). To prevail on a claim for failure to make a reasonable accommodation, the plaintiff must establish the following: (1) he or an associate of his is handicapped within the meaning of 42 U.S.C. § 3602(a) and the defendant knew or should have known of this fact; (2) an accommodation may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (3) such accommodation is reasonable; and (4) the defendant refused to make the requested accommodation. *Fair Hous. of the Dakotas,*

*Inc. v. Goldmark Prop. Mgmt., Inc.*, 778 F. Supp. 2d 1028, 1037 (D.N.D. 2011) (citing *Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urb. Dev.*, 620 F.3d 62, 67 (1st Cir. 2010); *Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006)).

Generally, Defendants argue that Plaintiffs lack standing under the FHA because they are neither a protected person nor an aggrieved person under the FHA. Because the Court finds Plaintiffs cannot meet the elements of a failure to accommodate claim under the FHA, it is unnecessary for the Court to analyze whether they have standing.

The FHA allows private persons to bring a civil action "to obtain appropriate relief with respect to such discriminatory housing practice or breach." 42 U.S.C. § 3613(a)(1)(A). An "'[a]ggrieved person' includes any person who—(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(I). The U.S. Supreme Court has recognized that this language "reflects a congressional intent to confer standing broadly." *Bank of Am. Corp. v. City of Miami, Fla.*, 581 U.S. 189, 197 (2017).

In this case, Plaintiffs fail to state a discrimination claim under the FHA because they make no allegations regarding their race, color, religion, sex, national origin, or handicap, or that such characteristics were the basis for the OHA's actions against them. Plaintiffs do not allege that they are protected persons under the FHA and allege no protected class to which they belong. Therefore, the Court will assume they are alleging they are "aggrieved persons" as described under the FHA.

For purposes of this motion, the Court gives Plaintiffs every factual inference and will assume they are "aggrieved parties" as defined under the FHA. They were living in an "assisted" home with a disabled person who was receiving housing assistance. Furthermore, Plaintiffs provided minimally sufficient evidence to show that Henry needed an accommodation for live-in aides who were already living in the household, and such an accommodation was reasonable. However, even giving Plaintiffs every factual inference, they cannot meet the requirements of the fourth element.

Plaintiffs allege Defendant OHA denied Henry's request for Plaintiffs to be live-in aides and further denied that request upon appeal/review. However, Plaintiffs' own allegations affirmatively establish that they were permitted to be live-in aides as of October 23, 2025, which was retroactive to June 24, 2025. Filing No. 37 at 2. From July to October 2025, Plaintiffs continued to live in the residence with Henry and presumably cared for him during that time. Thus, Plaintiffs cannot establish that Defendant OHA refused to make Henry's requested accommodation for live-in aides and their claim premised on this accommodation request must fail.

### 2. Retaliation (under FHA, state law and Rehabilitation Act)

Plaintiffs next allege that Defendants retaliated against them by withholding rent payments, issued a coercive lease ultimatum and demanded lease paperwork.

Both the FHA and the Rehabilitation Act allow a plaintiff to recover for retaliation. *See Neudecker v. Boisclair Corp.*, 351 F.3d 361, 363–64 (8th Cir. 2003). The FHA specifically provides a civil remedy and "prohibits retaliation against any person on account of his having exercised or enjoyed a right granted or protected by the FHA." *Gallagher v. Magner*, 619 F.3d 823, 838 (8th Cir. 2010). The FHA makes it "unlawful to

coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . ., any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617.  Unlawful conduct under section 3617 includes "[r]etaliating against any person because that person reported a discriminatory housing practice to a housing provider or other authority." 24 C.F.R. § 100.400(c)(6).  "To state a claim for retaliation under the FHA, Plaintiff must show: (1) Lee engaged in a protected activity; (2) Defendant was aware of the activity; (3) Defendant took adverse action against Lee; and (4) there is a causal link between the adverse action and the protected activity." *United States v. Edmunds*, No. 15-CV-2705 (JRT/TNL), 2016 WL 7670605, at *4 (D. Minn. Dec. 6, 2016), *report and recommendation adopted*, *United States v. Edmunds*, No. CV 15-2705 (JRT/TNL), 2017 WL 102964 (D. Minn. Jan. 10, 2017).  "Protected activity can include requesting a reasonable accommodation, protesting discriminatory housing practices, or opposing practices the plaintiff reasonably and in good faith believed amounted to discriminatory housing practices." *Kris v. Dusseault Fam. Revocable Tr.*, 594 F. Supp. 3d 333, 341 (D.N.H. 2022).  Plaintiffs also allege violations of the Nebraska Fair Housing Act, which is virtually identical to the federal statute, so those claims will be analyzed together.

Similarly, to prevail on a claim for retaliation under the Rehabilitation Act, "[Plaintiff] must prove that he was engaged in a 'protected activity.'" *Sherman v. Runyon*, 235 F.3d 406, 409 (8th Cir. 2000).  "[T]o be engaged in a protected activity under the Rehabilitation Act, [Plaintiff] must have been protesting what he perceived as discriminatory acts." *Id.* at 410.

10

Plaintiffs' vague allegations do not specify what protected activity they engaged in. Although filing a request for accommodation could be considered protected activity, Plaintiffs admit that Henry submitted the request for accommodation; not them. Filing No. 7 at 4, ¶ 12. In the alternative, Plaintiffs indicate in their amended complaint that they "filed claims with OHA." *Id*. at 5, ¶ 18. However, they don't indicate when those claims were filed, with whom they were filed or the substance of those claims. However, the Court has closely reviewed Plaintiffs' exhibits and they indicate that they filed "claims" with OHA on August 1 and 2, 2025. Filing No. 18-1 at 75–88. Those documents allege that OHA, "through its agents and employees, has engaged in a pattern of unlawful, discriminatory, and retaliatory conduct, including but limited to: 1. Retaliatory Interference with Federal Housing Assistance . . . [and] 2. Disability Discrimination and Denial of Reasonable Accommodation." *Id*. at 77.

Therefore, giving Plaintiffs the benefit of every inference, the Court will conclude Plaintiffs engaged in protected activity when they complained to OHA. Notwithstanding this conclusion, Plaintiffs still cannot prevail on a retaliation claim because they fail to establish what retaliatory/adverse action was taken against them by OHA or Seldin.

As discussed above, Plaintiffs' complaint that OHA didn't immediately grant them live-in aide status is not cognizable. OHA did approve Plaintiffs as live-in aides on October 23, 2025. Plaintiffs allege that OHA withheld rent subsidies from Henry, but that is a benefit for Henry, not Plaintiffs.

Also Plaintiffs allege that Seldin engaged in retaliatory action by "demanding" that they complete the application paperwork. The Court finds that taping a packet of information to the front door of the residence is not intimidating or threatening behavior

11

that FHA protects against. There was no threat of eviction from Seldin and no other actions that could plausibly be considered intimidating or threatening behavior by the management company. The Court finds these allegations are insufficient to state a plausible claim of retaliation under the FHA and Rehabilitation Act.

### 3. Common Law Tort of bad faith

Plaintiffs next bring a state law claim alleging bad faith on the part of the Defendants. Plaintiffs' claim is misplaced. Although the state of Nebraska does recognize the tort of bad faith, that relates to a situation between an insurer and insured. The "general theory underlying the tort of bad faith is that the law implies a covenant of good faith and fair dealing as a result of the contractual relationship between the insurer and the insured." *Millard Gutter Co. v. Shelter Mut. Ins. Co.*, 980 N.W.2d 420, 431 (Neb. 2022) (citing *Braesch v. Union Ins. Co.*, 464 N.W.2d 769, ___ (Neb. 1991), *disapproved of by Wortman By & Through Wortman v. Unger*, 578 N.W.2d 413 (Neb. 1998)). The Nebraska Supreme Court explains that this tort "embraces any number of bad faith settlement tactics relating to insurance claims, such as inadequate investigation, delays in settlement, false accusations, and so forth." *Millard Gutter Company*, 980 N.W.2d at 432, quoting *Ruwe v. Farmers Mut. United Ins. Co.*, 469 N.W.2d 129, 135 (Neb. 1991).

Even if we were to assume OHA and/or Seldin acted in bad faith when they initially denied Henry's application for accommodation, it is not a situation where this tort is applicable. Therefore, this claim has no plausibility and is dismissed.

### 4. Fraudulent misrepresentation

Finally, Plaintiffs allege that OHA engaged in fraudulent misrepresentation when it falsely stated family members were ineligible to be live-in aides. Filing No. 7 at 7. Further

12

they allege Seldin engaged in fraud or misrepresentation when they demanded that Plaintiffs complete the tax credit application paperwork. *Id.*

> It is well established that both fraudulent misrepresentation and negligent misrepresentation are tort causes of action adopted from the Restatement (Second) of Torts §§ 525 and 552. To state a claim for fraudulent misrepresentation, a plaintiff must allege (1) that a representation was made; (2) that the representation was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that the representation was made with the intention that the plaintiff should rely on it; (5) that the plaintiff did so rely on it; and (6) that the plaintiff suffered damage as a result.

*Zawaideh v. Nebraska Dep't of Health & Hum. Servs. Regul. & Licensure*, 825 N.W.2d 204, 212 (Neb. 2013) (internal citations omitted). Plaintiffs' claims against both OHA and Seldin fail as a matter of law.

The Nebraska Political Subdivisions Tort Claims Act ("PSTCA"), Neb. Rev. Stat. § 13-901 to 13-928, "is the exclusive means by which a tort claim may be maintained against a political subdivision or its employees." *Smith v. Iverson*, No. 8:19CV298, 2019 WL 4417548, at *17 (D. Neb. Sept. 16, 2019), quoting *Geddes v. York Cnty.*, 729 N.W.2d 661, 665 (Neb. 2007); *see* Neb. Rev. Stat. § 13-902 ("[N]o suit shall be maintained against such political subdivision or its officers, agents, or employees on any tort claim except to the extent, and only to the extent, provided by the [PSTCA]."). OHA is a political subdivision of the State of Nebraska, *see* Neb. Rev. Stat. § 71-1575(16), and tort claims against the OHA are governed by the PSTCA, *see* Neb. Rev. Stat. § 71-15,168. The PSTCA authorizes tort claims against political subdivisions, subject to certain exceptions, including "[a]ny claim arising out of assault, battery, false arrest, false imprisonment, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or

13

interference with contract rights," sometimes referred to as the intentional-torts exception. Neb. Rev. Stat. § 13-910(7).

Therefore, the intentional tort exception applies to Plaintiffs' cause of action against OHA that arises out of misrepresentation or deceit and OHA is immune from suit from this cause of action.

Regarding Plaintiffs' claim for fraudulent misrepresentation against Seldin, the PTSCA does not apply because Seldin is not a political subdivision.  However, the claim against Seldin is also deficient as the factual content that Plaintiffs pled has no plausibility and must fail.  It isn't entirely clear what statement Plaintiffs allege is false.  They claim that by "demanding unrelated LIHTC/tax credit paperwork" Seldin engaged in "fraud, coercion, and misrepresentation."  Filing No. 7 at 7.  Again, the letter from Seldin dated August 25, 2025, included in that packet indicates that Henry signed the lease with Seldin and that based on Henry's contract with OHA, they would pay a portion of the rent under the Housing Assistance Payment program.  Filing No. 18-1 at 129.  The letter from Seldin also indicated that as Hasani and Toni were household members, they needed additional information from them (screening applications, LIHTC application and proof of income). *Id*. at 129–30.  The letter stated that the Plaintiffs **"must"** complete the paperwork to be "authorized occupants at the property."  *Id*. at 130 (emphasis in original).  There was no threat of eviction in that letter.  And there is no indication what was untrue in the letter or that Plaintiffs relied on that untruth to their detriment.

As discussed above, a strongly worded letter "demanding" that Plaintiffs complete certain paperwork is not the kind of threat or intimidation that is cognizable in a court of law.  This claim will be dismissed.

14

## C. Motion to Amend

Plaintiffs have filed a motion to amend their complaint. Filing No. 75. The proposed amendment would establish the date when Plaintiffs' claims arose as December 2023. This amendment would not change the Court's analysis regarding any of Plaintiffs' claims as set forth in this order. Therefore, this request is denied as moot.

## D. Stay Proceeding

Finally, Plaintiffs have asked the Court to stay the proceedings because there is an investigation being conducted by HUD and/or the Omaha Human Rights and Relations Department. While the investigation(s) may help to resolve some of the administrative issues Plaintiffs are encountering, they have no effect on the Court's analysis regarding any of Plaintiffs' claims as discussed herein. Therefore, Plaintiffs' motion to stay is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court finds Plaintiffs' request for injunctive relief is moot. In addition, the Court finds Plaintiffs' Amended Complaint fails to state a cause of action upon which the Court can grant relief.

THERFORE, IT IS ORDERED THAT:

1. Defendant OHA's motion to dismiss, Filing No. 5, is dismissed as moot due to the filing of an Amended Complaint.

2. Plaintiffs' motion for preliminary injunction, Filing No. 37, is denied.

3. Defendant OHA's motion to dismiss the Amended Complaint, Filing No. 20, is granted.

4. Defendant Seldin's motion to dismiss the Amended Complaint, Filing No. 48, is granted.

15

5.  Plaintiffs' Motion to Amend, Filing No. 75, is denied.

6.  Plaintiffs' Motion to Stay Proceedings, Filing No. 76, is denied.

7.  The Court will enter a separate judgment.

Dated this 18th day of June, 2026.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge